**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| **Rozann G. Bergdale,** | ) | |
| **Plaintiff,** | ) | **3:16-cv-08198 JWS** |
| **vs.** | ) | **ORDER AND OPINION** |
| **Quality Loan Service Corp., *et al.*,** | ) | **[Re: Motion at Docket 7]** |
| **Defendants.** | ) | |

## I. MOTION PRESENTED

At docket 7 defendant Quality Loan Service Corporation ("QLS") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, supported by a separate statement of facts at docket 8. Plaintiff Rozann G. Bergdale ("Bergdale") opposes at docket 14, supported at docket 15 by a separate statement of facts and response to QLS' separate statement of facts. QLS replies at docket 19.

Oral argument was not requested and would not assist the court.

## II. BACKGROUND

This case presents a dispute regarding whether QLS violated Arizona law by recording a Notice of Trustee's Sale ("Notice") that announced the foreclosure of Bergdale's home. The underlying note and deed of trust at the center of the parties'

dispute was issued by Countrywide Bank, FSB ("Countrywide") in 2007.[1] Bergdale contends that Countrywide violated the Truth in Lending Act ("TILA")[2] in issuing the loan. On September 29, 2009, she sent Countrywide a letter stating two inherently contradictory things: (1) she was exercising her right under TILA to rescind the loan[3] and (2) she was willing to entertain a reasonable offer from Countrywide to modify that same loan.[4]

Countrywide did not take any actions toward rescinding the loan or the security interest. Instead, Bergdale executed a loan modification agreement in 2010 that expressly amended and supplemented the 2007 note and deed of trust.[5] The loan modification agreement states in pertinent part that "[e]xcept as otherwise specifically provided in this Agreement, the [original] Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with all terms and provisions thereof, as amended by this Agreement."[6]

In 2015 Bergdale recorded a Notice of Rescission of Deed of Trust with the Yavapai County Recorder's Office, stating that she rescinded the 2007 note and deed of trust via her September 29, 2009 letter.[7] Yet, in May 2016 QLS, purportedly acting

---

[1]Doc. 1 at 11 ¶ 10.

[2]15 U.S.C. § 1601, *et seq*.

[3]*See* 15 U.S.C. § 1635.

[4]Doc. 16-1 at 4–5.

[5]Doc. 8 at 17–19.

[6]*Id.* at 17.

[7]Doc. 1 at 59–60.

as the successor trustee under the 2007 deed of trust, recorded the Notice of Trustee's Sale stating that it planned to sell Bergdale's home at a public auction on August 29, 2016.[8] On August 10 Bergdale sued QLS in the Superior Court for Yavapai County, alleging two causes of action related to the Notice: (1) false recordings under A.R.S. § 33–420(A)-(D); and (2) negligence *per se*.[9] QLS removed the case to this court under 28 U.S.C. § 1332.

**III. STANDARD OF REVIEW**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[11] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[12] However, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[13]

---

[8]*Id.* at 88–89.

[9]*Id.* at 9–24.

[10]Fed. R. Civ. P. 56(a).

[11]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[12]*Id.*

[13]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[14] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[15] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[16] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[17] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[18]

## IV. DISCUSSION

### A. Bergdale Cannot Show That QLS Violated A.R.S. § 33–420

Arizona Revised Statutes § 33–420 imposes civil and criminal liability on a person who records a false document purporting to claim an interest in real property if the person knew or had reason to know that the document "is forged, groundless,

[14] *Id.* at 323.

[15] *Id.* at 323–25.

[16] *Anderson,* 477 U.S. at 248–49.

[17] *Id.* at 255.

[18] *Id.* at 248–49.

contains a material misstatement or false claim[,] or is otherwise invalid."[19] Bergdale's first cause of action essentially alleges that QLS knew or should have known that the Notice is groundless and invalid because it knew that in 2009 she rescinded the note and deed of trust upon which the Notice is based.

"The purpose of § 33–420 is to protect property owners from actions clouding title to their property."[20] The statute achieves this purpose by proscribing the recording of various types of invalid property claims. If a property owner attacks a recorded document because its asserted claim to real property is factually "groundless" (or because it is invalid for the same reason it is groundless),[21] the recording party is liable under A.R.S. § 33–420 if (1) the claim "has no arguable basis or is not supported by any credible evidence" and (2) the recording party knew of should have known this.[22] To satisfy the first prong, the claim must be frivolous; the statute does not apply "merely because [the recording party] may lose on the merits of his action."[23] For example, in *SWC Baseline* the Arizona Court of Appeals held that a party was not liable for making a groundless claim in a recorded document (or for recording a claim that was invalid because it was groundless) because there was "widespread confusion over title . . . and

---

[19]A.R.S. § 33–420(A).

[20]*Wyatt v. Wehmueller*, 806 P.2d 870, 875 (Ariz. 1991).

[21]*Evergreen W., Inc. v. Boyd*, 810 P.2d 612, 619 n.2 (Ariz. Ct. App. 1991).

[22]*Id.* at 619. *See also SWC Baseline & Crismon Inv'rs, L.L.C. v. Augusta Ranch Ltd. P'ship*, 265 P.3d 1070, 1080 (Ariz. Ct. App. 2011).

[23]*Evergreen*, 810 P.2d at 619.

the intent of the parties."[24] Due to this legitimate confusion, the court held that the property claim made in the recorded document was not frivolous as a matter of law.[25]

The statute also applies to documents that are invalid due to procedural deficiencies. If a property owner attacks a recorded document on this basis, the recording party is liable if (1) the document is invalid and (2) the defendant knew or should have known this.[26] In *Delmastro*, a contractor performed work for the owner of one block at a commercial complex located at 2190 W. River Road in Tucson.[27] The contractor subsequently sent three poorly-drafted preliminary twenty-day notices pursuant to A.R.S. § 33–992.01 that mistakenly included property at a different block of the same complex that was owned by an unrelated third party.[28] After the contractor filed a complaint to foreclose its mechanic's lien, the third party answered and filed a counterclaim under A.R.S. § 33–420(A). The Arizona Court of Appeals held that the lien was invalid because the preliminary notices failed to describe any work performed at the third party's property as required by A.R.S. § 33–992.01(C).[29] The court also held that the third party was entitled to summary judgment on its statutory counterclaim because (1) the lien was invalid and (2) the contractor knew or should have known that

---

[24] *SWC Baseline*, 265 P.3d at 1082.

[25] *Id.*

[26] *Delmastro & Eells v. Taco Bell Corp.*, 263 P.3d 683, 691 (Ariz. Ct. App. 2011).

[27] *Id.* at 686.

[28] *Id.*

[29] *Id.* at 687.

the lien would be invalid unless its twenty-day notices complied with A.R.S. § 33–992.01(C).[30]

Bergdale's argument in support of her § 33-420 claim is somewhat thin.[31] She appears to rely on *Delmastro*, but the case does not apply because she does not allege that the Notice is invalid because QLS failed to comply with any procedural prerequisites. Instead, her claim attacks as groundless the Notice's assertion of QLS' interest in her property.[32] In support of her claim, she cites the 2009 letter in which she states that she was exercising her TILA rescission rights. If the letter said nothing more, her claim might have merit. But the letter's next paragraph goes on to state that Bergdale was willing to entertain a reasonable loan modification offer as a "settlement." Thus, when the 2009 letter is read as a whole, QLS has at least an arguable basis for asserting that Bergdale was merely threatening to rescind the deed of trust if she did not receive a loan modification. QLS supports this interpretation with credible evidence in the form of the loan modification agreement that Bergdale subsequently executed in which she affirmed her obligations under the 2007 note and deed of trust.

Under A.R.S. § 33–420 the court's task is not to determine whether QLS' property interest would ultimately prevail, but rather, whether QLS had an arguable basis for asserting that interest in the Notice. Because QLS' claim is supported by an

---

[30]*Id.* at 691–93.

[31]Doc. 14 at 14–16.

[32]*See Stauffer v. U.S. Bank Nat. Ass'n*, 308 P.3d 1173, 1177 (Ariz. Ct. App. 2013) ("[B]y recording the Notice of Trustee Sale, FATCO is asserting an interest in the Property; it is putting others on notice that it has the right to sell, and is in fact selling, the Property.").

arguable basis and credible evidence, it is not groundless. Bergdale's A.R.S. § 33–420 claim fails as a matter of law.

**B. Bergdale Cannot Establish Negligence *Per Se***

Bergdale's second cause of action alleges negligence *per se*. "A person who violates a statute enacted for the protection and safety of the public is guilty of negligence *per se*."[33] Bergdale's negligence *per se* claim asserts that QLS violated the following three statutes: A.R.S. §§ 33–420; 39–161; and 13-2320(A)(4). For the reasons discussed above, Bergdale's negligence *per se* claim based on A.R.S. § 33–420 fails. Her cause of action also fails under the other two statutes.

A.R.S. § 39–161 states that a person who records "an instrument he knows to be false or forged, which, if genuine, could be . . . recorded under any law of this state or the United States, or in compliance with established procedure is guilty of a class 6 felony." This statute does not apply here because Bergdale does not contend that the Notice is counterfeit, inauthentic, or otherwise not genuine.[34]

A.R.S. § 13–2320(A)(4) states that "[a] person commits residential mortgage fraud if, with the intent to defraud, the person" "[f]iles or causes to be filed with the office of the county recorder of any county of this state any residential mortgage loan document that the person knows to contain a deliberate misstatement, misrepresentation or material omission." Although the statute does not define

---

[33] *Good v. City of Glendale*, 722 P.2d 386, 389 (Ariz. Ct. App. 1986).

[34] *State v. Jones*, 218 P.3d 1012, 1013 (Ariz. Ct. App. 2009) ("[A]n instrument that contains an untrue statement falls within A.R.S. § 39–161 only if the instrument is counterfeit, inauthentic or otherwise not genuine.").

"residential mortgage loan document," it defines "residential mortgage loan" as "a loan or agreement to extend credit to a person that is secured by a deed to secure debt, security deed, mortgage, security interest, deed of trust or other document representing a security interest or lien on any interest in one to four family residential property and includes the renewal or refinancing of any loan."[35] Thus, the phrase "residential mortgage loan document" in A.R.S. § 13–2320(A)(4) appears to refer to a document that is either (1) a "loan or agreement to extend credit to a person" or (2) a document that "represents a security interest or lien on any interest in" certain residential property, including a "deed to secure debt, security deed, mortgage, security interest, [and] deed of trust."[36] The Notice is neither. A.R.S. § 13–2320(A)(4) does not apply.

## V. CONCLUSION

Based on the preceding discussion, the motion at docket 7 is granted. The clerk shall issue a judgment in favor of the defendant.

DATED this 26th day of January 2017.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[35]A.R.S. § 13–2320(E)(3).

[36]*Id.* This interpretation is consistent with the statute's legislative history. The final House summary of the version of HB 2040 that was transmitted to the Governor defines mortgage fraud as "a material misstatement, misrepresentation, or omission relied upon by an underwriter or lender to fund, purchase, or insure a loan." *House Bill Summary for HB 2040*, 48th Leg., 1st Reg. Sess. (Ariz. June 29, 2007). This shows that the Arizona Legislature was concerned with fraud during the "mortgage lending process," defined as the "process through which a person seeks or obtains a residential mortgage loan." A.R.S. § 13–2320(E)(1). A notice of trustee's sale is not a document associated with the mortgage lending process.